**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br><br>v.<br><br>CHRISTIAN ECHEVARRIA,<br><br>        Defendant. | No. 3:17-cr-44 (MPS),<br><br>No. 3:06-cr-269 (MPS) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

On June 18, 2019, Defendant Christian Echevarria was sentenced to 48 months of imprisonment, to be served concurrently with the sentence of 37 months of imprisonment imposed upon revocation of his supervised release in another case, 3:06-cr-269, and a four-year term of supervised release in the main case, 3:17-cr-44. ECF No. 50; *see* ECF No. 1599 in 3:06-cr-269. He surrendered to FCI Allenwood, a federal correctional institution in Pennsylvania, on August 14, 2019 and has been incarcerated there since that date. ECF No. 52 at 2.

On April 8, 2020, Mr. Echevarria filed a motion for compassionate release from custody, seeking release to home confinement for the remainder of his sentence due to the dangers posed by the COVID-19 virus. *Id.* at 1. He filed an identical motion in both this case and his other criminal case. ECF No. 1610 in 3:06-cr-269. On April 9, the Court ordered Mr. Echevarria to file proof on the docket of any attempts to exhaust his remedies with the Bureau of Prisons ("BOP"). ECF No. 53. On April 27, Mr. Echevarria filed copies of his requests to the BOP for release. *E.g.*, ECF No. 54-3 (Inmate Request to Staff, dated March 29, 2020); ECF No. 54-4 (letter to Warden, dated April 13, 2020). Mr. Echevarria also filed additional information including medical records, ECF No. 56, and employment prospects, ECF No. 57. The Court ordered the

Government to respond to Mr. Echevarria's motion for release by close of business on May 1, 2020. The Court held a telephonic status conference on May 1, 2020, at which the Government stated that it did not oppose a reduction of Mr. Echevarria's sentence to time served, in light of Mr. Echevarria's asthma—as corroborated by his medical records—and the 18 U.S.C. § 3553(a) factors.

Mr. Echevarria moves for release under 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Before the First Step Act was enacted in 2018, this provision did not provide for the filing by the defendant of a motion with the Court, leaving the decision whether to file a motion seeking an order of "compassionate release" exclusively to the Director of the BOP. The First Step Act amended the statute to the text shown above. The Sentencing Commission, however, has not updated its policy statement applicable to Section 3582(c)(1)(A) to take account of the defendant's right, after exhausting remedies, to file a motion with the Court. *See* U.S.S.G. § 1B1.13. I therefore agree with several district courts that have addressed this issue and found that the provisions of U.S.S.G. § 1B1.13—though still providing useful guidance—are obsolete, and thus that the statutory language requiring that the sentence reduction be "consistent with applicably policy statements by the Sentencing Commission" is no longer operative. *See, e.g., United States v. Rodriguez*, 2020 WL 1627331 *4 (E.D. Pa. April 1, 2020).

2

Therefore, Mr. Echevarria is entitled to relief if (1) he has fully exhausted his administrative remedies, and (2) he has shown that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

I have previously found the statutory exhaustion requirement to be mandatory and not excusable by the Court. *United States v. Nathaniel Smith*, 2020 WL 1903160 (April 17, 2020). Here, I find that Mr. Echevarria has satisfied that requirement. He submitted an "Inmate Request to Staff" form dated March 29, 2020, in which he requested to "be placed in home confinement to complete [his] sentence" due to his asthma and the "COVID-19 pandemic." ECF No. 54-3. During the telephonic status conference on May 1, 2020, the Government stipulated that the warden of Mr. Echevarria's facility received this request on March 29 or shortly thereafter. Because 30 days have elapsed since the BOP's receipt of Mr. Echevarria's request to modify his sentence, Mr. Echevarria has exhausted his administrative remedies, as required by statute.

Mr. Echevarria has also demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence. Other courts in this Circuit have held that a defendant's pre-existing health conditions, particularly respiratory conditions, combined with the increased risks of COVID-19 in prisons, constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. McCarthy*, 2020 WL 1698732, *5 (D. Conn. Apr. 8, 2020) (finding "extraordinary and compelling reasons" in light of defendant's age and "COPD, asthma, and other lung-related ailments"); *United States v. Norris*, No. 17-cr-106 (SRU), 3:18-cr-243 (SRU) (Apr. 16, 2020) (same, since "[Mr.] Norris suffers from asthma and uses an Albuterol inhaler to treat his symptoms. Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of COVID-19. Due to his incarceration, [Mr.] Norris is unable to properly safeguard against infection."); *United States v. Smith*, No. 12 CR. 133 (JFK), 2020

WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020) (same, since "[Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments."); *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *5 (D. Conn. Apr. 20, 2020) (same, since "Mr. Gileno has demonstrated that he suffers from asthma and respiratory conditions that place him at greater risk from COVID-19, and that he is unable to properly guard against infection while incarcerated.").

  Mr. Echevarria is 49 years old. He has submitted medical records showing a history of "Bronchial Asthma since 2010." ECF No. 56-2 at 1. He uses an inhaler, *id.*, and has been treated by the BOP for asthma, shortness of breath, and other "chronic medical problems" during prior periods of incarceration and in the past few months. *E.g.*, ECF No. 56-4 at 1 (October 15, 2013 treatment notes indicating "shortness o[f] breath and heart palpitations"); ECF No. 56-7 at 1 (February 11, 2020 treatment notes indicating history of asthma and other "chronic medical problems"); ECF No. 56-8 at 1 (March 30, 2020 treatment notes indicating "increased shortness of breath" and history of asthma); ECF No. 56-9 at 1 (April 10, 2020 treatment notes indicating "worsening of asthma over the past 2 weeks"). Mr. Echevarria represents, and the Government agrees, that the BOP has designated him as an inmate with medical conditions that require monitoring. *See* ECF No. 52 at 2 (alleging that he "has been designated a chronic care inmate due to his asthma"). Mr. Echevarria takes two asthma medications. ECF No. 52 at 2; ECF No. 56-10 at 1 (BOP prescription list, including two types of inhalers). Health officials have recognized that individuals with chronic respiratory disease face a greater risk from the COVID-19 virus. *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-

19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html ("People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."); ECF No. 54-1 (Declaration of Chris Beyrer, MD, MPH, a Professor of Epidemiology at Johns Hopkins Bloomberg School of Public Health). Due to his incarceration, Mr. Echevarria is unable to safeguard against infection, and prisons are associated with high transmission probabilities for infectious diseases like COVID-19. ECF No. 54-1 at 2 (explaining the risks of COVID-19 in detention facilities).

I have considered the factors listed in 18 U.S.C. § 3553(a) along with Mr. Echevarria's motion and supplemental filings, ECF Nos. 52, 54, 56. Although Mr. Echevarria has a substantial criminal record, his only violent offense was committed over 18 years ago. His continued involvement in narcotics trafficking into his 40s gives me pause, but he also demonstrated very strong pretrial adjustment and made substantial rehabilitative efforts prior to my imposition of the sentence last year—the major reason the "sentence was the product of a downward departure." ECF No. 50 at 1. To protect the public, the Court will lengthen the period of supervised release to cover the remainder of what would have been his incarceration term, and will impose strict conditions at the outset to ensure he does not contribute to the further spread of the COVID-19 disease, should he be a carrier.

After considering carefully the Section 3553(a) factors, combined with Mr. Echevarria's medical condition and current conditions of confinement, I find that extraordinary and compelling reasons warrant a reduction of the term of imprisonment in each of his two sentences—the 48 months imposed in 3:17-cr-44 and the concurrent 37 months imposed in 3:06-c-r269—to a sentence of time served, under 18 U.S.C. § 3582(c)(1)(A). His motions for compassionate release in both cases, ECF No. 52 in 3:17-cr-44 and ECF No. 1610 in 3:09-cr-

269, are GRANTED.[1]  **Accordingly, I hereby order that Christian Echevarria (Register Number: 16946-014) be released from BOP custody on the morning of Wednesday, May 6, 2020**. Mr. Echevarria shall serve a period of supervised release equal to the unserved portion of his original term of imprisonment, plus the four-year term of supervised release previously imposed. Mr. Echevarria was scheduled to become eligible for release from prison on January 8, 2023 (having served 85% of his 48-month term of imprisonment). Therefore, he shall be on supervised release until that date, followed by an additional four years of supervised release (which was the originally imposed term). All of the conditions of supervised release listed in his original Judgment, ECF No. 50, shall apply throughout the period of supervised release. In addition, the following additional special conditions shall apply:

**Upon release on May 6, 2020, Mr. Echevarria shall travel as soon as possible and in no more than 24 hours to his address in Connecticut. There, he shall be in home confinement for sixty (60) days, to be enforced by electronic monitoring. During the first fourteen (14) of those 60 days, he must self-quarantine,** *i.e.***, self-isolate at home by living, by himself, in a separate room of the house or apartment building.** (The self-quarantine order within the home is for the protection of his family members.) Following that fourteen-day period, he shall remain in **home confinement for an additional forty-six (46) days**. During the first fourteen days of his period of home confinement, he shall remain inside the home at all times, except for medical reasons, which medical reasons must be communicated to the U.S. Probation Office, if at all possible, before he attempts to leave the home.  After the 14 days of self-quarantine have expired, he shall remain inside the home at all times during the remaining 46

---

[1] The Court's prior order, ECF No. 1611 in 3:06-cr-269, denying the motion for release in 3:09-cr-269 is VACATED.

days of home confinement, except for medical reasons, searching for employment (*i.e.*, actual job interviews), or maintaining employment; in each case, he must communicate with the Probation Officer before leaving the home, except in the case that a documented medical emergency prevents him from doing so.

As soon as possible after the fourteen-day period of quarantine, he shall also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons, providing a copy of such communication to the assigned Probation Officer.

IT IS SO ORDERED.


Dated: Hartford, Connecticut
        May 4, 2020

                                                        /s/
                                            Michael P. Shea, U.S.D.J.